# 26-1940-cv

## United States Court of Appeals

*for the*

## Second Circuit

DBW Partners LLC, d/b/a The Capitol Forum,

*Plaintiff-Appellant,*

ABC,

*Plaintiff,*

– v. –

BTG Pactual Asset Management US, LLC,

*Defendant-Appellee,*

DEF,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PAGE PROOF BRIEF FOR PLAINTIFF-APPELLANT

JOHN B. WILLIAMS (*pro hac vice*)
HARTY WILLIAMS, PLLC
1629 K Street, NW
Suite 300
Washington, DC 20006
(202) 277-8435

NEIL H. KOSLOWE
POTOMAC LAW GROUP
1717 Pennsylvania Avenue, NW
Suite 1025
Washington DC 20006
(202) 320-8907

*Attorneys for Plaintiff-Appellant*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (396827)

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

There is no parent corporation and no publicly held corporation that owns 10% or more of the stock of plaintiff-appellant DBW Partners LLC.

# TABLE OF CONTENTS

**Page**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT....................................i

TABLE OF AUTHORITIES ....................................................................iv

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................1

STATEMENT OF THE CASE.................................................................2

A. The Facts ..................................................................................2

1. Capitol Forum ..........................................................................2

2. Capitol Forum's Safeguards to Prevent and Detect Infringement........................................................................................3

3. Market Securities Infringement in October 2021 .......................5

4. Capitol Forum's D.C. Infringement Suit Against Market Securities ..........................................................................7

5. Capitol Forum Discovers the Infringement -- and the Infringer -- on April 27, 2023 ..................................................9

B. The Course of Proceedings Below ..............................................12

C. The Decision Below ..................................................................16

SUMMARY OF ARGUMENT .............................................................19

ARGUMENT ......................................................................................24

I. THE IDENTITY OF THE INFRINGER IS A "CRITICAL FACT" (reviewable de novo)..........................................................24

A. The Case Law Demonstrates that the Claim was Timely Filed....................................................................................24

B. The Cases Cited by the District Court Do Not Support its Decision..............................................................................31

C. Who Would a Copyright Holder Sue and Where? ..................39

II. CAPITOL FORUM DID NOT LEARN OF ANY INFRINGEMENT UNTIL APRIL 27, 2023 (reviewable de novo) ..... 43

A. Prior to April 27, 2023, Capitol Forum Only Suspected Infringement ..... 44

B. The Evidence Does Not Support the District Court's Contrary Ruling ..... 47

III. CAPITOL FORUM WAS ENTITLED TO EQUITABLE TOLLING (reviewable for abuse of discretion) ..... 52

IV. ALTERNATIVELY, IF THE DISTRICT COURT PERCEIVED A FACTUAL DISPUTE CONCERNING CAPITOL FORUM'S KNOWLEDGE, THAT DISPUTE WAS FOR THE JURY (reviewable de novo) ..... 55

V. CAPITOL FORUM DID NOT ABANDON ITS MANAGEMENT CLAIM (reviewable for abuse of discretion) ..... 57

CONCLUSION ..... 59

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*A.Q.C. ex rel. Castillo v. United States*,
656 F.3d 135 (2d Cir. 2011) .......... 28, 36

*American Board of Internal Medicine v. Rushford*,
841 Fed. App'x 440 (3d Cir. 2020) .......... 28, 29

*Barrett v. United States*,
689 F.2d 324 (2d Cir. 1982) .......... *passim*

*Behrens v. JPMorgan Chase Bank, N.A.*,
No. 21-2603, 2024 WL 1090856 (2d Cir. March 13, 2024) .......... 35-36

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System*,
603 U.S. 799 (2024) .......... 42

*DBW Partners LLC v. BTG Pactual Management US,* LLC,
Case No. 24 Civ. 9836, 2026 WL 2030790 (LGS) .......... 2

*Guccione v. United States*,
670 F. Supp. 527 (S.D.N.Y. 1987) .......... 38, 39

*Harper v. Ercole*,
648 F.3d 132 (2d Cir. 2011) .......... 53, 54

*Hayden v. Koons*,
183 F.4th 136 (2d Cir. 2026) .......... 34, 51, 58

*Katz v. Goodyear Tire & Rubber Co.*,
737 F.2d 238 (2d Cir. 1984) .......... 57

*Keepers, Inc. v. City of Milford*,
807 F.3d 24 (2d Cir. 2015) .......... 18, 46

*Kovaco v. Rockbestos-Surprenant Cable Corp.*,
834 F.3d 128 (2d Cir. 2016) .......... 57-58

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) .......... 37, 38, 39

*Levy v. BASF Metals Ltd.*,
917 F.3d 106 (2d Cir. 2019) .......... *passim*

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
112 F.4th 144 (2d Cir. 2024) ........................................................................ *passim*

*Moll v. Telesector Res. Grp., Inc.*,
94 F.4th 218 (2d Cir. 2024) ...........................................................................57

*Monsarrat v. Zaiger*,
303 F.Supp.3d 164 (D. Mass. 2018).................................................................30

*Motorola Solutions, Inc. v. Hytera Comm. Corp. Ltd.*,
108 F.4th 458 (7th Cir. 2024) ..........................................................................30

*Nealy v. Warner Chappell Music, Inc.*,
60 F.4th 1325 (11th Cir. 2023) .........................................................................31

*Newdow v. Roberts*,
603 F.3d 1002 (D.C. Cir. 2010).........................................................................41

*Petrella v. Metro-Goldwyn-Mayer*,
572 U.S. 663 (2014) .........................................................................................43

*Psihoyos v. John Wiley & Sons, Inc.*,
748 F.3d 120 (2d Cir. 2014) ...................................................................... 23, 40

*Roeder v. J.P. Morgan Chase & Co.*,
No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) .......................................36

*Rotella v. Wood*,
528 U.S. 549 (2000) ................................................................................. 22, 27

*Saint-Jean v. Emigrant Mortg. Co.*,
129 F.4th 124 (2d Cir. 2025) ..................................................................... 52, 53

*Six Dimensions, Inc. v. Perficient, Inc.*,
969 F.3d 219 (5th Cir. 2020) ............................................................................58

*Snyder-Hill v. Ohio State University*,
48 F.4th 686 (6th Cir. 2022) .............................................................................30

*Ugo-Alum v. New York State Dep't of Motor Vehicles*,
No. 23 Civ. 7458, 2024 WL 3553168 (S.D.N.Y. June 26, 2024) .........................37

*United States v. Kubrick*,
444 U.S. 111 (1979) ................................................................................. *passim*

*Valentin v. Dinkins*,
121 F.3d 72 (2d Cir. 1997) ...............................................................................41

*William A. Graham Co. v. Haughey*,
568 F.3d 425 (3d Cir. 2009) .....31

*Zanghi v. Incorporated Village of Old Brookville*,
752 F.2d 42 (2d Cir. 1985) .....47

*Zappin v. Cooper*,
No. 23-671, 2024 WL 3250475 (2d Cir. July 1, 2024) ..... 34, 35

**Statutes & Other Authorities:**

17 U.S.C. § 507(b) ..... *passim*

20 U.S.C. §§ 1681-1688 .....30

28 U.S.C. § 1291 .....1

28 U.S.C. § 1404(a) .....13

28 U.S.C. § 2401(b) .....25

28 U.S.C. § 1331 .....1

28 U.S.C. § 1338 .....1

28 U.S.C. § 1367 .....1

42 U.S.C. § 1983 .....37

42 U.S.C. § 1985 .....36

Fed. R. Civ. P. 30(b)(6) ..... *passim*

Fed. R. Civ. P. 56(c)(1)(A) .....46

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1338 (copyright), and 1367 (supplemental).

This Court has jurisdiction of the appeal under 28 U.S.C. § 1291 (final district court order).

The district court's final order was entered on July 14, 2026, and plaintiff-appellant's notice of appeal was timely filed on July 16, 2026.

This appeal is from a final order that disposes of all plaintiff-appellant's claims below.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether, under the discovery rule, a copyright infringement claim can accrue under 17 U.S.C. § 507(b) when, despite the exercise of due diligence, plaintiff did not know the identity of the infringer.

2. Whether the district court committed reversible error in holding that no reasonable jury could find that plaintiff lacked actual knowledge of infringement later than October 2021, or, alternatively, in failing to submit that issue to a jury.

3. Whether the district court abused its discretion in refusing to equitably toll 17 U.S.C. § 507(b) during the period plaintiff was prevented from discovering that its copyrights had been infringed by defendant, due solely to the extraordinary circumstance of the fraudulent concealment of those facts.

4. Whether the district court abused its discretion in holding that plaintiff "abandoned" its copyright management information claim because it did not respond to an argument that defendant never raised in the memorandum of law supporting its motion for summary judgment.

## STATEMENT OF THE CASE

This is a copyright infringement case brought by plaintiff-appellant DBW Partners LLC, doing business as The Capitol Forum ("Capitol Forum"), against defendant-appellee BTG Pactual Asset Management US, LLC ("BTG"). After the parties filed their pleadings and pursued discovery, BTG moved for summary judgment on the ground that Capitol Forum's claims were barred by the three-year limitations period prescribed by 17 U.S.C. § 507(b). Capitol Forum opposed BTG's motion, arguing that its claims were not time-barred.

The district court, in an Order and Opinion issued by Judge Lorna G. Schofield, granted BTG's motion. *DBW Partners LLC v. BTG Pactual Management US,* LLC, Case No. 24 Civ. 9836, 2026 WL 2030790 (LGS) (S.D.N.Y. July 14, 2026).

### A. <u>The Facts</u>

#### 1. <u>Capitol Forum</u>

Capitol Forum is an investigative news and analysis publisher, providing time sensitive and in-depth reports to its subscribers relating to mergers and

acquisitions, consumer protection, government contracts, corporate investigations, and antitrust enforcement. Capitol Forum was founded in 2012 and soon became one of the leading publications in the field. Due to its respected status in the area, Capitol Forum has been able to command a premium price for its online subscription products.[1]

When Capitol Forum began publishing, it applied for copyright registrations for all its publications. Upon obtaining those registrations, it placed a copyright notice on each publication. Capitol Forum's subscription agreements prohibit subscribers from transmitting, copying, or posting Capitol Forum publications.[2]

### 2. <u>Capitol Forum's Safeguards to Prevent and Detect Infringement</u>

In 2016 and 2017, Capitol Forum learned of three instances in which its copyrights were being infringed by subscribers.[3] Because Capitol Forum subscribers pay a premium fee for their subscriptions, they become understandably annoyed and contact Capitol Forum to complain when they see Capitol Forum's content appearing on other websites.[4] In all three instances, Capitol Forum

---

[1] Declaration of Theodore Downey ("Downey Dec.") at 1 and ¶ 2 [ECF Dkt. No. 91].

[2] *Id*. at ¶ 3 and Exhibit 1 thereto [ECF Dkt. No. 91-1].

[3] *Id*. at ¶ 3.

[4] *Id*.

retained counsel to investigate the infringements, which resulted in settlements with the infringers.[5]

After experiencing the three infringements, Capitol Forum commissioned an extensive overhaul of its distribution and electronic monitoring system, which took over a year to complete and cost over $250,000.[6] Under the new system, Capitol Forum would inform its subscribers of the release of a publication by sending them an electronic "alert," which would provide the headline and often the opening sentences of the article.[7] To access the full article, the subscriber would request a copy by clicking on a link, after which a copy of the article would appear on the subscriber's screen embossed with an indelible watermark containing the subscriber's name and e-mail address.[8]

Subscribers remained able to forward the alert containing the summary information.[9] But if they did so, Capitol Forum's subscription agreement permitted it to monitor that activity and its software engineers would report any

---

[5] Downey Dec. at ¶ 3.

[6] *Id*. at ¶ 5.

[7] *Id*.

[8] *Id*.

[9] *Id*.

attempts to forward the article to unauthorized users.[10] This system permitted Capitol Forum to determine if a subscriber might be attempting to forward its content to unauthorized users, and to track the IP addresses of persons or entities unaffiliated with that subscriber.[11] The system also permitted Capitol Forum's engineers to monitor log-in attempts from different IP addresses to determine if a subscriber had given its log-in credentials to an unauthorized user.[12]

### 3. Market Securities Infringement in October 2021

On October 25, 2021, a Capitol Forum subscriber informed Capitol Forum that he had been receiving summaries of its articles from an investment firm known as Market Securities LLC.[13] Capitol Forum deployed its software engineers and state-of-the-art monitoring system to determine how Market Securities was able to get its information, whether it was one of its subscribers, and if so, who it was.[14] At that time, Capitol Forum had 143 subscribers.[15] However,

---

[10] Downey Dec. at ¶ 5

[11] *Id.*

[12] *Id.*

[13] Exhibit 10 to Declaration of Ryan E. Dornberger ("Dornberger Dec.") [ECF Dkt. No. 76-10].

[14] Downey Dec. at ¶ 7.

[15] *Id.* ¶ 38.

Capitol Forum's monitoring system did not reveal activity that would permit Capitol Forum to identify any of its subscribers as the source of the articles.[16]

The problem confounded Capitol Forum. As Josep Alba, Capitol Forum's Chief Revenue Officer, later testified about an e-mail he sent to Capitol Forum colleagues on October 27, 2021: "[Y]ou cannot get all this information with certainty, a hundred percent impossible, just by reading a headline and two sentences. And the only way you can get hands on the full article is if somebody that has access to the full article [is] sending it. ***And the only people that have access to full articles are The Capitol Forum employees and our subscribers*** (emphasis added)."[17] Thus, at the time, Capitol Forum did not know whether the infringer might be a subscriber or might be one of its employees.

Capitol Forum retained private counsel to investigate the matter. On October 27, 2021, counsel sent a cease-and-desist letter to Market Securities and engaged Market Securities on the source.[18] Market Securities would not disclose either the identity of the source or the method by which it was getting Capitol Forum information.[19]

---

[16] Downey Dec. at ¶ 7.

[17] Exhibit 1 to Dornberger Dec. at 1, 67-68 [ECF Dkt. No. 76-1].

[18] Downey Dec. at ¶ 10.

[19] *Id*. and Exhibit 6 thereto [ECF Dkt. No. 91-6].

As Capitol Forum later learned in discovery, Market Securities was well aware that it had been receiving Capitol Forum copyrighted articles from BTG but deceptively concealed that information from Capitol Forum to protect BTG. On November 23, 2021, shortly after Capitol Forum's counsel sent the cease-and-desist letter, Jennifer Donaker, the Head of U.S. at Market Securities and the recipient of Capitol Forum's copyrighted articles, told a work colleague that Capitol Forum was "searching for the rats," but that "we won't tell [Capitol Forum] names of who gives us articles."[20]

Similarly, on January 11, 2022, Donaker complained to a friend that Capitol Forum was being a "royal pain in the a**" because it was insisting that Market Securities disclose the identity of its source.[21] She told the friend that Capitol Forum would not settle with Market Securities unless she revealed the identity of her source, but that she was "not giving up my clients," and was willing to fight "bc if I win, they can fk off entirely."[22]

**4. <u>Capitol Forum's D.C. Infringement Suit Against Market Securities</u>**

On May 16, 2022, Capitol Forum filed a copyright infringement suit against Market Securities in the United States District Court for the District of Columbia.

---

[20] Downey Dec. at ¶¶ 11-12.

[21] *Id.*

[22] *Id.*

*DBW Partners LLC v. Market Securities LLC*, D.D.C. Case No. 1:22-cv-01333 (BAH). The case was assigned to Chief Judge Beryl A. Howell.

Capitol Forum alleged two causes of action against Market Securities in this lawsuit. Capitol Forum's first cause of action was for direct infringement of its copyright by Market Securities, based on Market Securities' summarization of Capitol Forum articles and distribution of their contents to its customers. Capitol Forum's second cause of action was for contributory infringement.[23] The cause of action for contributory infringement, pled "on information and belief," was based on Capitol Forum's suspicion that Market Securities solicited Capitol Forum copyrighted articles from one of its subscribers.[24]

On July 15, 2022, Market Securities moved to dismiss both causes of action. In its motion to dismiss Capitol Forum's cause of action for contributory infringement, Market Securities argued that Capitol Forum's allegation that Market Securities had received Capitol Forum information from a person or entity, specifically one of Capitol Forum's subscribers, was "speculative and fails to account for oral transmission."[25]

---

[23] Downey Dec. at ¶ 14.

[24] *Id*.

[25] *Id*. and Exhibit 8 thereto [ECF Dkt. No. 91-8].

Although briefing on Market Securities' motion to dismiss was completed on August 31, 2022, Chief Judge Howell did not rule on it until March 23, 2023.[26] The court denied Market Securities' motion to dismiss the direct infringement claim but granted its motion to dismiss the contributory infringement claim.[27] The court ruled that Capitol Forum's assertion that a subscriber was forwarding articles to Market Securities was based on "speculation" rather than knowledge. Chief Judge Howell was clear that Capitol Forum's subscriber-infringement "theory" was speculative. She wrote:

> While alleging that, on information and belief, a third party (in particular, 'one or more Capital Forum subscribers') 'transmit[ted] the Capitol Forum publications' to Market Securities at the latter's inducement, Compl. ¶ 22, this allegation merely amounts to a conclusory assertion that contributory copyright infringement has occurred. This theory as to how defendant obtained timely copies of Capitol Forum reports for allegedly infringing purposes ***is just speculation at this point*** (emphasis added).[28]

**5. <u>Capitol Forum Discovers the Infringement -- and the Infringer -- on April 27, 2023</u>**

As authorized by the district court, Capitol Forum proceeded with discovery against Market Securities. On April 27, 2023, Market Securities produced Capitol

[26] Downey Dec. at ¶ 15 and Exhibit 9 thereto [ECF Dkt. No. 91-9].

[27] *Id.*

[28] *Id.*

Forum copyrighted publications that had been in its possession and that bore the watermark of Cristina Suarez, an employee of BTG, which was a Capitol Forum subscriber.[29] This was the first time Capitol Forum acquired actual knowledge that its copyrights had been infringed by a subscriber and that BTG was the infringer.[30]

Market Securities also produced summaries of Capitol Forum articles which it had sent in what it called "blasts" to its clients.[31] These "blasts" showed that Market Securities had been summarizing Capitol Forum articles since March 2020, one month after BTG became a Capitol Forum subscriber.[32] They also demonstrated that Market Securities had not learned of the contents of Capitol Forum publications through "oral transmissions," because the "blasts" contained extensive and detailed information that could have been obtained only by a thorough review of a written copy of each publication.[33]

As a result of its discovery from Market Securities and a subpoena it served on BTG, Capitol Forum was able to piece together the scheme BTG and Market Securities employed to conceal from Capitol Forum BTG's identity as the source

---

[29] Downey Dec. at ¶ 16 and Exhibit 10 thereto [ECF Dkt. No. 91-10].

[30] *Id*. at ¶ 16.

[31] *Id*. at ¶ 17.

[32] *Id*.

[33] *Id*.

of the articles BTG provided to Market Securities.[34] This is how the concealment scheme worked.

For the most part, Suarez did not attempt to forward to Market Securities through normal electronic channels monitored by Capitol Forum.[35] Instead, Suarez would download Capitol Forum articles to Adobe Acrobat and send them to a file-sharing application called Evernote.[36] She then transferred the articles from Evernote to her personal cellphone and resent them to Market Securities using the "WhatsApp" application on her cellphone.[37] Suarez configured the WhatsApp settings on her cellphone to delete automatically all transmissions of Capitol Forum articles to Market Securities.[38]

By transmitting the articles over WhatsApp and deleting them, Suarez was able to conceal from Capitol Forum her infringements of its copyright. In addition, she violated rules and guidance of the Securities and Exchange Commission requiring the preservation of all client communications for a prescribed period.[39]

---

[34] Downey Dec. at ¶ 7.

[35] *Id*.

[36] *Id*. and Exhibit 2 thereto [ECF Dkt. No. 91-2].

[37] *Id*.

[38] *Id*. and Exhibit 3 thereto [ECF Dkt. No. 91-3].

[39] *Id*. at ¶¶ 8, 20 and Exhibit 4 thereto [ECF Dkt. No. 91-4].

Suarez knew that Capitol Forum articles received by her were embossed with an indelible watermark containing her name and e-mail address, which would have tipped a recipient of the articles that she was the source. To defeat that risk of detection, Suarez secured a commitment from Market Securities that the watermarked Capitol Forum articles it received from her would not be disseminated outside the Market Securities organization.[40] Capitol Forum determined that, between February 2020 and November 2021, Suarez sent over 100 Capitol Forum articles to Market Securities.[41]

### B. <u>The Course of Proceedings Below</u>

Armed with the information it acquired in discovery, Capitol Forum moved on June 16, 2023, to amend its complaint in the D.C. suit against Market Securities to add BTG as a defendant.[42] The district court permitted the amendment and added BTG as a defendant.[43]

However, on October 17, 2023, BTG moved to dismiss the D.C. action against it for lack of personal jurisdiction and improper venue.[44] In the alternative,

---

[40] Downey Dec. at ¶ 9.

[41] Complaint at ¶ 30 [ECF Dkt. No. 91].

[42] Exhibit 15 to Dornberger Dec. at 1 [ECF Dkt. No. 76-15].

[43] *Id.*

[44] Exhibit 13 to Dornberger Dec. [ECF Dkt. No. 76-13].

BTG requested that Capitol Forum's copyright infringement claims against it be transferred to the Southern District of New York.[45] Capitol Forum opposed BTG's motion and its request for a transfer.[46]

On August 10, 2024, the district court granted BTG's motion to dismiss Capitol Forum's copyright claims against it for lack of personal jurisdiction.[47] However, the district court agreed with Capitol Forum that those claims should not be transferred to the Southern District of New York.[48] It held: "Transferring the claim against BTG would divide the claims to be pursued in two different federal district courts. Given the obvious resource and logistical challenges that would present to plaintiff to pursue these claims before two separate courts, plaintiff does not consent to transfer. Moreover, as plaintiff notes, '[i]f personal jurisdiction exists, then 28 U.S.C. § 1404(a) would apply to any transfer request,' but BTG has not addressed the factors to be considered for such transfer. Dismissal, rather than transfer, of the claim against BTG is thus appropriate."[49]

---

[45] Exhibit 13 to Dornberger Dec. at 23-24 [ECF Dkt. No. 76-13].

[46] *Id*. at 33 n. 3 [ECF Dkt. No. 76-15].

[47] *Id*.

[48] *Id*.

[49] *Id*.

Capitol Forum and Market Securities settled the D.C. suit. Capitol Forum filed a Stipulation of Dismissal With Prejudice on June 24, 2025.[50]

After BTG was dismissed from the Market Securities case in D.C., Capitol Forum served a subpoena for documents on BTG, which led to the production of a trove of documents in November 2024 that had been improperly withheld from Capitol Forum by Market Securities and revealed the significant number of infringements.[51] Capitol Forum filed the complaint below against BTG shortly thereafter, on December 20, 2024, which was well within three years after it learned on April 27, 2023, that BTG infringed its copyrights.[52] Capitol Forum raised two claims in its complaint against BTG: one for copyright infringement and the other for distribution of copyright material knowing that copyright management information was altered or removed.[53] The case was assigned to Judge Lorna G. Schofield.[54]

---

[50] Docket Entries [ECF Dkt. No. 83].

[51] Downey Dec. at ¶¶ 19-22.

[52] Docket Entries [ECF Dkt. No. 1].

[53] Complaint ¶¶ 40-57 [ECF Dkt. No. 9].

[54] *See* Docket Entry No. 7 [ECF Dkt. No. 7].

On February 10, 2025, BTG sent a letter to Judge Schofield announcing its intent to file a motion to dismiss on statute of limitations grounds.[55] However, during an initial pretrial and pre-motion conference, Judge Schofield persuaded BTG not to file that motion and ordered the parties to proceed with discovery.[56]

After the close of discovery, Judge Schofield entered an order on October 1, 2025, directing BTG to file a motion for summary judgment on its statute of limitations defense by October 21, 2025; directing Capitol Forum to file an opposition by November 4, 2025; and directing BTG to file any reply by November 12, 2025.[57] In addition, Judge Schofield ordered that the case be placed in second place on her trial-ready calendar of April 27, 2026, at 10:00 AM, or on the first available date thereafter.[58] However, after the parties timely filed their summary judgment papers, Judge Schofield entered an order on January 14, 2026, stating that, "in light of Defendant's pending motion for summary judgment, the jury trial and all pretrial deadlines are ADJOURNED sine die."[59]

---

[55] Letter of Mark Hannemann [ECF Dkt. No. 19].

[56] Order of March 4, 2025 [ECF Dkt. No. 32].

[57] Order of October 1, 2025 [ECF Dkt. No. 69].

[58] *Id.*

[59] Order of January 14, 2026 [ECF Dkt. No. 98].

Nothing substantive happened in the case for the next nearly six months. On July 7, 2026, Capitol Forum sent a letter to Judge Schofield informing her that, the week before, the parties had engaged in a private mediation session without success.[60] Capitol Forum requested that Judge Schofield restore the case to her trial calendar and hold another pretrial conference.[61]

On July 14, 2026, Judge Schofield entered an Opinion and Order granting BTG's motion for summary judgment on statute of limitations grounds.[62]

### C. The Decision Below

The district court, reciting that the facts upon which it based its decision "are drawn from the parties' submissions, construed in the light most favorable to Plaintiff as the non-moving party," and applying the federal discovery rule, decided that Capitol Forum's copyright infringement claims were "time barred."[63] The district court reached this decision in two steps. First, it decided that, "[o]n the record evidence, no reasonable jury could find that Plaintiff … discovered

---

[60] Letter of Neil H. Koslowe [ECF Dkt. No. 104].

[61] *Id.*

[62] Opinion and Order of July 14, 2026 ("Opinion") [ECF Dkt. No. 107].

[63] Opinion at 1, 4.

Defendant's infringement of Plaintiff's copyrights later than October 27, 2021.[64], Second, it held that the three-year limitations period for copyright infringement claims begins to run on the date plaintiff discovers the infringement.[65] The district court reasoned that, because it found Capitol Forum discovered the infringement on October 27, 2021, the suit Capitol Forum filed against BTG on December 20, 2024, was too late.[66]

The district court acknowledged that Capitol Forum "dispute[d] when a copyright claim accrues."[67] It said Capitol Forum argued that "a plaintiff must have actual or constructive knowledge not only of the infringement, but also of the identity of the infringer, for a cause of action under the Copyright Act to accrue."[68] However, the district court, citing language in *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024) and *Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108 (2d Cir. 2019) (per curiam), ruled that "[t]his argument is

[64] Opinion at 4.

[65] *Id*. at 5-6.

[66] *Id*. at 6.

[67] *Id*.

[68] *Id*. at 5.

incorrect."[69] The district court also concluded that the cases upon which Capitol Forum relied were either distinguishable or not binding.[70]

The district court considered Capitol Forum's argument that it "makes no sense" to hold that a copyright claim can accrue before the plaintiff has any idea who the defendant could be or where suit should be brought.[71] However, the district court found this argument "unavailing" because it was a "policy" argument: "Policy concerns … cannot surmount the plain language of the statute.'"[72]

The district court found "unpersuasive" Capitol Forum's reliance on the testimony of BTG's Rule 30(b)(6) witness, that BTG agreed Capitol Forum '"did not know of BTG's copyright violations until 2023.'"[73] Citing *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015), the district court held that BTG was not precluded from '"correcting, explaining, or supplementing'" that testimony, and that in fact its counsel disavowed that testimony.[74]

---

[69] Opinion at 5.

[70] *Id*. at 7-8.

[71] *Id*. at 8.

[72] *Id*.

[73] *Id*.

[74] *Id*. at 8.

The district court also held that Capitol Forum was not entitled to equitable tolling of the statute of limitations.[75] It said, "no reasonable factfinder could find that any fraudulent concealment by Defendant prevented Plaintiff from filing within the limitations period."[76]

Finally, the district court granted summary judgment to BTG on Capitol Forum's claim against it for distribution of copyright material knowing that copyright management information was altered or removed.[77] The district court said that BTG had moved for summary judgment "on all claims," but that Capitol Forum's opposition "addresses only Plaintiff's claim for copyright infringement."[78] Consequently, the district court held that Capitol Forum's copyright management claim "is deemed abandoned."[79]

## SUMMARY OF ARGUMENT

The district court held that, under the discovery rule, an infringement claim subject to the three-year limitations period prescribed by the Copyright Act accrues when the plaintiff learns of the infringement, even if at that time the plaintiff,

---

[75] Opinion at 9.

[76] *Id*. at 9-10.

[77] *Id*. at 10-11.

[78] *Id*. at 10.

[79] *Id*. at 11.

acting with due diligence, does not know the identity of the infringing defendant. Using that view of the law, the district court decided that Capitol Forum's infringement claim, filed on December 20, 2024, was time-barred because no reasonable jury could find that Capitol Forum had actual knowledge that its copyrights were being infringed at any time after October 27, 2021. In other words, the district court held that it was beyond dispute that Capitol Forum was aware in October 2021 that its copyrights were being infringed. Based on this assumption, the district court held that Capitol Forum's cause of action accrued in October 2021 – even though it is undisputed that, in October 2021, Capitol Forum did not know the identity of the infringer.

This holding – that a claim can accrue before the plaintiff, exercising due diligence, is able to determine the identity of the defendant – is unprecedented and sharply contrary to appellate court jurisprudence. To Capitol Forum's knowledge, neither the Supreme Court nor any appellate court has construed the discovery rule, in any context, to mean that a cause of action accrues even though the plaintiff, exercising due diligence, ***does not and cannot know*** the person or entity who committed the actionable wrong. To the contrary, in a leading and precedential accrual case, *United States v. Kubrick*, 444 U.S. 111, 122 (1979), the Supreme Court stated that one of the "critical facts" a plaintiff must know before a cause of action accrues is "***who has inflicted the injury*** (emphasis added)."

This Court's decision in *Barrett v. United States*, 689 F.2d 324, 330 (2d Cir. 1982) should settle the issue. In *Barrett*, which involved a claim under the Federal Tort Claims Act ("FTCA"), the district court granted summary judgment to the government on the ground that plaintiff's claim was time-barred. This Court vacated and remanded.

This Court pointed to evidence in the record that the identity of the tortfeasor had been concealed. *Barrett*, 689 F.2d at 328. Relying on and quoting extensively from *Kubrick*, this Court held that, under the discovery rule, plaintiff's claim could not accrue until plaintiff discovered or should have discovered the "critical facts" of the injury, and those "critical facts" included "***the identity of the tortfeasor*** (emphasis added)." *Id*. at 329. This Court emphasized that not only is "the 'what' element" of causation essential in determining when a cause of action accrues, but "the 'who' element" is equally essential. *Id.* at 330. The Supreme Court, this Court, and other federal courts of appeals have followed *Kubrick* and *Barrett* in a variety of non-copyright cases.

The district court mistakenly relied on cases decided under different federal statutes, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Commodities Exchange Act ("CEA"), and the FTCA to support its holding. But none of those cases stands – even remotely – for the proposition that a cause of action accrues before the plaintiff knows the identity of the wrongdoer.

The RICO cases certainly do not hold that a plaintiff must sue before learning the identity of the person or entity causing the injury. Rather, those cases addressed a different question – whether a plaintiff who knows he or she has been injured may delay filing until he or she discovers *additional elements* of the RICO claim, such as a pattern of racketeering or the legal significance of the conduct.

In a seminal RICO case that the district court did not mention, *Rotella v. Wood*, 528 U.S. 549 (2000), plaintiff knew exactly who the putative defendant was at the time of his injury. He just did not know that a fraud sufficient to plead a RICO cause of action had occurred. The Supreme Court repeated its statement in *Kubrick*, that one of the "critical facts" governing the accrual of a claim is whether plaintiff knew "'who has inflicted the injury.'" *Rotella*, 528 U.S. at 555.

Similarly, every CEA case cited by the district court involved plaintiffs who either knew or could identify at least one defendant at the time the limitations period began to run. None addressed the question presented here: whether a plaintiff's claim expires before she or he can identify the actionable wrongdoer.

Moreover, the construction of the discovery rule adopted by the district court makes no sense. Under that rule, who would a copyright plaintiff sue? And where? The district court dismissed this question as "policy" based, but this Court itself applied the discovery rule to copyright infringement claims precisely because of

"[p]olicy considerations." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014).

Even if the district court's view of the law were correct, the court committed reversible error in holding no reasonable jury could find that Capitol Forum acquired actual knowledge later than October 27, 2021, that its copyrights had been infringed. The evidence, including Chief Judge Howell's decision in the D.C. suit and the testimony of BTG's designated corporate representative, would have led a reasonable jury to the very opposite conclusion. At a minimum, this evidence would permit a reasonable jury to find that Capitol Forum had only a suspicion of infringement before April 27, 2023.

Moreover, because Capitol Forum was prevented from knowing throughout the period from October 2021 to April 2023 that its copyrights had been infringed solely due to the exceptional circumstance of the fraudulent concealment of that fact, the district court abused its discretion in refusing to equitably toll the statute of limitations during that 18-month period. The fraudulent concealment prevented the limitations clock from starting for approximately 18 months.

Under this Court's "stop clock" method of equitable tolling, if the district court had applied equitable tolling Capitol Forum would have had a full three-year period within which to file its claim once the extraordinary circumstance ceased. And if there were a genuine issue about the material fact of when Capitol Forum

first learned that its copyrights had been infringed, the district court committed reversible error in granting summary judgment to BTG instead of reserving that question for resolution by a jury.

Finally, the district court abused its discretion in deeming Capitol Forum's copyright management claim "abandoned" because Capitol Forum did not address that claim in its opposition to BTG's motion for summary judgment. BTG did not say one word about that claim in the memorandum of law supporting its motion for summary judgment. Accordingly, there was no reason for Capitol Forum to address that claim in its opposition. It was BTG who "abandoned" its challenge to Capitol Forum's copyright management claim, not the other way around.

## ARGUMENT

### I. THE IDENTITY OF THE INFRINGER IS A "CRITICAL FACT"
(reviewable *de novo*)

#### A. **<u>The Case Law Demonstrates that the Claim was Timely Filed</u>**

The text of 17 U.S.C. § 507(b) governing civil copyright infringement actions states: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." In a variety of contexts regarding the timeliness of federal claims, the courts have grappled with the meaning and application of the term "accrued."

One of the leading cases on accrual is *United States v. Kubrick*, 444 U.S. 111 (1979). The question in *Kubrick* was the timeliness of a claim for medical

malpractice under the Federal Tort Claims Act ("FTCA"). The FTCA, at 28 U.S.C. § 2401(b), requires that a tort claim against the United States must be presented to the appropriate federal agency "within two years after such claim accrues." Plaintiff suffered a hearing loss after being treated for a leg infection at a Veterans Administration hospital in 1968. He was advised by a private physician in 1969 that it was highly possible the hearing loss was caused by a drug improperly administered to him at the hospital, and he was advised by a second physician in 1971 that the drug did cause the hearing loss.

Plaintiff filed suit under the FTCA in 1972, and the government defended on the ground that his claim "accrue[d]" in 1969 and was barred by the applicable two-year statute of limitations. The district court rejected the government's defense and granted judgment to the plaintiff and the Third Circuit affirmed, holding that plaintiff's claim did not "accrue" until he knew or reasonably suspected that the doctor who caused the injury was legally blameworthy, which did not occur until 1971.

The Supreme Court reversed. It held that, "for statute of limitations purposes," a plaintiff's claim accrues when plaintiff is "in possession of the ***critical facts*** that he has been hurt ***and who has inflicted the injury"*** (emphasis added). *Kubrick*, 444 U.S. at 122. It concluded that plaintiff was in possession of those "critical facts" in 1969 and his claim was time-barred.

This Court applied *Kubrick's* "critical facts" analysis in *Barrett v. United States*, 689 F.2d 324 (2d Cir. 1982). Lead plaintiff in *Barrett* was the daughter of a male civilian who died in 1953 from the injection of a mescaline derivative administered to him while he unknowingly served as a test subject in a U.S. Army chemical warfare experiment. The Army first revealed this fact in 1975. Plaintiff filed an administrative claim in 1975 and commenced suit against the United States under the FTCA in the district court in 1976. The government defended on the ground, among others, that plaintiffs' FTCA claim "accrue[d]" in 1953 and was time-barred. The district court agreed with the government and granted it summary judgment on that ground.

This Court vacated the district court's decision and remanded. First, the Court pointed out there was evidence that the Army deliberately concealed material facts relating to its conduct, which would trigger application of the "diligence-discovery accrual standard" to plaintiffs' claim. *Barrett*, 689 F.2d at 328. Under that standard, "plaintiffs' cause of action accrued when they discovered or should have discovered the ***critical facts*** of Blauer's injury and its cause (emphasis added)." *Id*.

Second, relying on and quoting extensively from *Kubrick*, the Court concluded that those "critical facts" included "***the identity of the tortfeasor*** (emphasis added)." *Barrett*, 689 F.2d at 329. In the words of the Court: "Not only

was the ‘what’ element of the causation arguably unknown to the plaintiffs until 1975, but ***the ‘who’ element*** also was missing from the puzzle (emphasis added).” *Id*. at 330. The Court distinguished FTCA cases which held that the identity of the government as a potential defendant need not be known to a plaintiff in order for a cause of action to “accrue,” because in those cases “the ‘who’ element was not actively being concealed” and “diligent discovery would have revealed the Government’s role.” *Id*. However, because there were disputes as to whether plaintiffs had exercised “due diligence” in attempting to discover the critical facts, the Court remanded the case to the district court for further proceedings. *Id*.

The Supreme Court, in *Rotella v. Wood*, 528 U.S. 549 (2000), reaffirmed *Kubrick’s* identification of the “critical facts” that trigger a plaintiff’s obligation to act as both injury and knowledge of the wrongdoer. Dealing with a civil claim under the Racketeer Influenced and Corrupt Organizations Act (“RICO”), the Supreme Court noted that, under the discovery rule, “discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.” 528 U.S. at 555. And then, quoting *Kubrick*, the Supreme Court said that among the critical facts about the “injury” the plaintiff must know to trigger the limitations period clock, as opposed to the non-critical “other elements of a claim,” are that the plaintiff ‘“has been hurt and ***who has inflicted the injury*** (emphasis added).’” *Id*.

This Court followed *Kubrick* and *Barrett* in *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135 (2d Cir. 2011). Plaintiff in *Castillo* brought a medical malpractice case against the government under the FTCA. The district court found that plaintiff's claim accrued in December 2005, and it was time-barred because her counsel did not file an administrative claim until April 2008, long after the expiration of the FTCA's two-year limitations period.

This Court affirmed. Citing *Kubrick* and *Barrett*, the Court noted that, under the discovery rule, the accrual date of an FTCA claim begins "when, 'with reasonable diligence,' the plaintiff 'has or … should have discovered the critical facts of both his injury and its cause.'" *Castillo*, 656 F.3d at 140. Those "critical facts" are "when, where, ***and against whom*** to bring suit (emphasis added)." *Id*. And further: "It is fundamental that a lawyer investigating a possible claim on behalf of a client needs to investigate not only whether a potential claim exists in the abstract, ***but also who would be the appropriate parties to sue,*** and what, if any, restrictions on the time and forum for bringing such a claim might exist." *Id.* at 145. Because this Court found that plaintiff knew those "critical facts" long before she filed her administrative claim in 2008, her suit was time-barred. *Id*. 140-43.

The Third Circuit followed the teachings of *Kubrick*, *Barrett*, and *Castillo* in *American Board of Internal Medicine v. Rushford*, 841 Fed. App'x 440 (3d Cir.

2020), a copyright infringement case.[80] Plaintiff in that case was a board that administered specialty-specific computer-based copyrighted exams to candidates seeking board certification as internal medicine physicians. The board brought a copyright infringement suit against defendant Rushford, a candidate who e-mailed exam content to a test preparation provider.

The board discovered the infringement in August 2009, but despite a diligent investigation, it did not discover Rushford's identity until January 2012. The board filed suit against Rushford in October 2014. The district court granted Rushford's motion for judgment on the pleadings on statute of limitations grounds. It held that the three-year statute of limitations period expired in August 2012, and the board's 2014 suit was time-barred.

The Third Circuit reversed and remanded for further proceedings. It held that, because the board "discovered Rushford's (intentionally concealed) identity in January 2012 … [t]he three-year statute of limitations therefore began to run as of January 2012." 841 Fed. App'x at 443. "Thus, when [the board] brought suit against Rushford in October 2014, it was within the three-year statute of limitations period, and hence, timely." *Id*.

---

[80] Capitol Forum cites the unpublished *American Board* decision for its reasoning.

The Sixth Circuit similarly relied on *Kubrick* in holding that the discovery rule applies to claims of sex-based discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, and that "[t]he '***critical facts*** that start the clock are 'that [the plaintiff] has been hurt ***and who has inflicted the injury*** (emphasis added)." *Snyder-Hill v. Ohio State University*, 48 F.4th 686, 701 (6th Cir. 2022). "If a plaintiff has no reason to know who injured them, their claim has not accrued." *Snyder-Hill*, 48 F.4th at 701.

Capitol Forum has not found any court of appeals decision other than *American Board* directly addressing whether the three-year limitations period for a copyright infringement claim begins to run only when the plaintiff knows or reasonably should have known the identity of the infringer.[81] Nevertheless, two circuits have formulated the copyright discovery rule in those terms and a third has assumed that formulation. *Motorola Solutions, Inc. v. Hytera Comm. Corp. Ltd.*, 108 F.4th 458, 479 (7th Cir. 2024) ("[t]he discovery rule holds that a copyright claim accrues and thus the copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that ***the defendant***

---

[81] In the district court, BTG relied on *Monsarrat v. Zaiger*, 303 F.Supp.3d 164, 166 (D. Mass. 2018), which dismissed a copyright infringement suit as time barred because plaintiff discovered the infringement more than three years before suit was filed, even though at that time the identity of the infringer was "inherently unknowable." *Monsarrat* has never been cited or relied upon for this holding by any court, and Judge Schofield did not mention it in her opinion.

***was violating his rights*** (emphasis added);" *Nealy v. Warner Chappell Music, Inc.*, 60 F.4th 1325, 1330 (11th Cir. 2023) ("[u]nder the discovery rule, a copyright ownership claim accrues, and therefore the limitations period starts, 'when the plaintiff learns, or should as a reasonable person have learned, that ***the defendant was violating his ownership rights***' (emphasis added);" *William A. Graham Co. v. Haughey*, 568 F.3d 425, 441 (3d Cir. 2009) (district court erred in granting summary judgment against plaintiff copyright holder on limitations grounds because the evidence showed plaintiff "was not on inquiry notice of Haughey's and DSI's infringement" more than three years before he filed suit.

These decisions confirm Capitol Forum's position that the limitations clock on its infringement claim did not start to run until April 27, 2023. That is when it learned for the first time, despite its prior diligent investigations, that BTG was the infringer. Accordingly, Capitol Forum's infringement claim was timely filed in the district court on December 20, 2024.

**B. <u>The Cases Cited by the District Court Do Not Support its Decision</u>**

In contrast to the appellate decisions supporting Capitol Forum's position, none of the cases upon which the district court relied for its contrary holding supports that holding. Indeed, none of them directly addresses whether the limitations clock on a copyright infringement claim starts to run before the plaintiff knows or can know the identity of the infringer.

First, the district court relied on this Court's statement in *Michael Grecco Productions, Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024), that a copyright infringement claim accrues when the '"copyright holder discovers, or with due diligence should have discovered, the infringement."[82] That statement is true as far as it goes: a copyright infringement claim cannot accrue before plaintiff knows or should have discovered the existence of the infringement. But that statement does not intimate, much less did *Grecco* hold, that an infringement claim can accrue before plaintiff knows or could have discovered the identity of the infringer. This Court's statement in *Grecco* is not inconsistent with Capitol Forum's contention that an infringement claim cannot accrue before plaintiff knows or should have discovered the identity of the infringer.

Second, the district court's reliance on this Court's decision in *Levy v. BASF Metals Ltd.*, 917 F.3d 106 (2d Cir. 2019) is also misplaced. Plaintiff in *Levy* brought a claim under the Commodities Exchange Act ("CEA") against 11 named defendants and others, alleging that they illegally manipulated the platinum futures contract market. Levy lost her entire investment in that market in 2008. She filed her suit in 2015 after she received in 2014 a copy of a class action complaint making like allegations. The district court, applying CEA's two-year statute of

[82] Opinion at 4-5.

limitations, granted defendants' motion to dismiss on limitations grounds, and Levy appealed.

On appeal, Levy argued that the district court mistakenly looked to the date she suffered her injury – 2008 – rather than the date she learned all the facts corroborating her CEA claim – 2014 – to determine the timeliness of her suit. This Court rejected that argument and affirmed the district court's decision. This Court held it was appropriate to apply the discovery rule to CEA's two-year statute of limitations, and under that rule "it is 'discovery of the injury, not discovery of the other elements of a claim,' that 'starts the clock.'" *Levy*, 917 F.3d at 108. Therefore, said the Court, "[t]he relevant inquiry … is not whether Levy had discovered the identity of the defendants or whether she had discovered the manipulation scheme she alleges in her complaint," but "[r]ather, the question is when Levy discovered her CEA injury – that is, a loss that was the result of a CEA violation. *Levy*, 917 F.3d at 108. She made that discovery in 2008, which rendered her suit untimely.

*Levy* did not present the question that arises here. Nothing in *Levy* indicates that Levy was unable, despite reasonable diligence, to identify any person responsible for her injury. Nor did *Levy* involve the deliberate concealment of the identity of the wrongdoer. The Court therefore had no occasion in *Levy* to decide whether a claim accrues when the plaintiff knows that an actionable injury may

have occurred but cannot identify any person against whom an action can be brought, and it had no reason to and did not consider this Court's holding in *Barrett* that the "who" is a "critical fact" for accrual of a claim where the tortfeasor's identity has been actively concealed.

Similarly, in its recent opinion in *Hayden v. Koons*, 183 F.4th 136, 144 (2d Cir. 2026), issued shortly after the decision below, the Court quoted the language in *Grecco* that a copyright holder '"has the length of time it takes, using due diligence, to discover the infringement: only from that point does the statute of limitations begin to run.'" However, as in *Levy*, the Court had no occasion in *Hayden* to address the issue that arises in this case – whether an infringement claim accrues even if the copyright holder does not and cannot know the identity of the infringer – or to consider its decision in *Barrett*, because plaintiff Hayden should have known the identity of the infringer and the occurrence of the infringement. The Court held Hayden's claim was time-barred because he failed to exercise due diligence in discovering the infringement more than 30 years after he should have.

None of the other five cases upon which the district court relied for its decision involved a copyright infringement claim and none holds that, under the discovery rule, the applicable statute of limitations begins to run even if the plaintiff does not know and cannot discover the identity of the wrongdoer. First, in *Zappin v. Cooper*, No. 23-671, 2024 WL 3250475 (2d Cir. July 1, 2024) (summary

order), plaintiff brought a civil RICO claim against three named defendants. The district court dismissed the claim as time-barred and this Court affirmed.

This Court considered but rejected plaintiff's argument that his RICO claim did not accrue until he learned the identity of the third defendant who participated in the alleged RICO scheme. The Court quoted *Levy* to the effect that the relevant inquiry for purposes of the discovery rule does not focus on the identity of the wrongdoer, but it said that made no difference because it was clear plaintiff learned the identity of all three defendants within the limitations period. *Zappin*, 2024 WL 3250475, at *2. Accordingly, *Zappin*, like *Grecco* and *Levy*, does not hold that, under the discovery rule, the limitations clock starts to run even if plaintiff does not know or cannot discover the identity of the wrongdoer.

Second, in *Behrens v. JPMorgan Chase Bank, N.A.*, No. 21-2603, 2024 WL 1090856 (2d Cir. March 13, 2024) (summary order), plaintiffs alleged that defendants engaged in a fraudulent scheme in violation of the CEA and RICO. The district court held that their claims were time-barred because they accrued when plaintiffs learned of their injuries and plaintiffs failed to file suit before the expiration of the limitations periods applicable to CEA and RICO claims. This Court affirmed.

On appeal, plaintiffs in *Behrens* did not argue that they were unable to identify the wrongdoers when they were injured. Thus, that issue was not

addressed by the Court in that case. Accordingly, the Court's statement that plaintiffs' claims were time-barred "even if plaintiffs did not discover 'the alleged manipulation scheme or the identity of the defendants'" when they learned of their injuries, 2024 WL 1090856, at *1, was unnecessary to its decision and does not bear on the issue raised here.

Third, this Court's opinion in *Roeder v. J.P. Morgan Chase & Co.*, No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (summary order) actually supports Capitol Forum's position. Plaintiffs brought their suit under 42 U.S.C. § 1985 on March 18, 2020, alleging that defendants helped cause their capture and imprisonment in Iran from 1979 to 1981. The district court dismissed the suit as time-barred and this Court affirmed.

On appeal, plaintiffs argued that their claim did not accrue until a newspaper published an article about defendants' conduct in December 2019. *Roeder*, 2022 WL 211702 at *1. This Court held that plaintiffs abandoned that argument in the district court and it was waived on appeal. *Id*. However, the Court added that this made no difference. *Id*. Quoting *Castillo*, that, under the federal discovery rule, a claim accrues when plaintiff determines "whether, when, where, ***and against whom to bring*** suit (emphasis added)," the Court held that plaintiffs discovered the relevant facts about their injury in 1981, so their claim was time-barred. *Id*.

Fourth, in *Ugo-Alum v. New York State Dep't of Motor Vehicles*, No. 23 Civ. 7458, 2024 WL 3553168 (S.D.N.Y. June 26, 2024) plaintiffs filed constitutional claims against defendants under 42 U.S.C. § 1983 in August 2023. The district court dismissed the claims as barred by the three-year limitations period for § 1983 claims, finding that plaintiffs knew about their injuries no later than 2019. Plaintiffs argued that "new evidence" emerged in 2022, providing additional information about the specific cause of their injuries, their damages, and "perhaps" about additional prospective defendants, so that their claims did not accrue until 2022. *Ugo-Alum*, 2024 WL 3553168 at *10-12.

The district court rejected that argument. It held that, under the discovery rule, they acquired the '"critical facts"' about their injuries in 2019. Plaintiffs never argued that they did not know the identity of the named defendants in 2019, and the district court had no occasion to consider how it would have ruled if, in fact, they lacked such knowledge.

Finally, in *Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998), plaintiff filed suit against the government under the FTCA, alleging that her late brother was a victim of and injured by tests conducted by the CIA in the 1950s administering the drug LSD to unsuspecting individuals. Plaintiff filed an administrative claim with the CIA in 1981, which was denied. The district court

dismissed plaintiff's claim as time-barred under the FTCA's two-year limitations period, and this Court affirmed.

Applying the discovery rule, this Court held that plaintiff's brother acquired sufficient knowledge of his injuries no later than 1978. Because plaintiff's administrative claim was not filed within two years of 1978, this Court held that it was properly dismissed as time barred.

While discussing the accrual of plaintiff's claim, this Court quoted from a district court decision in *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y. 1987), in which the district court said that, under the discovery rule, the "critical facts" that trigger the start of the applicable limitations period are '"knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it.'" *Kronisch*, 150 F.3d at 121. The district court here made much of the disjunctive word '"or'" in that quote within a quote. It took it to be a "decision" by this Court, that, under the discovery rule, the start of the limitation period "does not require knowledge of the identity of the 'person or entity that inflicted' the injury – 'knowledge of the injury's existence and knowledge of its cause' suffice." [83]

[83] Opinion at 7.

Knowledge of the identity of the defendants was not an issue in *Kronisch* because it was clear all along who the potential defendant was – the CIA. Therefore, this Court's quote within a quote cannot fairly be deemed a "decision" on that subject.

Putting that aside, the underlying quote in *Guccione* was wrong. The district court in *Guccione*, 670 F. Supp. at 536, said that quote was based on the Supreme Court's statement in "*United States v. Kubrick*, 444 U.S. at 122." But in *Kubrick*, 444 U.S. at 122, the Supreme Court said that the "critical facts" triggering accrual of a claim are that plaintiff "has been hurt ***and*** who has inflicted the injury (emphasis added). Accordingly, the district court erred in relying on the word "or" in the quote within a quote in *Kronisch* to support its holding.

**C. <u>Who Would a Copyright Holder Sue and Where?</u>**

The rule BTG wants this Court to adopt based on the district court's decision is that a copyright holder who knows that its copyright has been infringed but does not and cannot discover the identity of the infringer within the three-year limitations period prescribed by 17 U.S.C. § 507(b) must nevertheless file suit within that three-year period or its claim will be extinguished as untimely. The question must be asked: under this rule, if a copyright holder suspects infringement but does not know the identity of the infringer, who does it sue and in what court?

The district court acknowledged that Capitol Forum posed this question to it, although it gave no answer.[84] The reason the district court gave for not answering this question was that '"[p]olicy concerns … cannot surmount the plain language of the statute.'"[85]

But the discovery rule is not contained in "the plain language" of 17 U.S.C. § 507(b). When this Court first held that the discovery rule applies to copyright infringement claims, it did so not only because the text and structure of the Copyright Act evinced Congress' intent to employ the discovery rule, but because "[p]olicy considerations also counsel in favor of the discovery rule in this context." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014).

Given that "policy considerations" lay at the very foundation of the discovery rule, it is entirely appropriate to reject the district court's construction of the discovery rule on the ground that, as a matter of "policy," it makes no sense and cannot be implemented in the real world. In fact, such a construction would encourage infringers and their accomplices (like Market Securities) to conceal their identities and escape liability.

In rare circumstances courts permit a plaintiff to sue a "John Doe" defendant, generally where suit is brought in a court of competent jurisdiction and

[84] Opinion at 8.

[85] *Id*.

the unknown identity of the defendant will eventually be made known through discovery. *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997). Capitol Forum attempted a variation of that tactic when it sued Market Securities in the federal district court in the District of Columbia, hoping through discovery to learn the identity of the infringer of its copyrights, only to have that effort denied by Chief Judge Howell. In all other circumstances, however, a plaintiff suing an unidentified defendant in a court picked at random would be asking that court to grant relief "against the world," something "that's not within the power of the courts." *Newdow v. Roberts*, 603 F.3d 1002, 1011 (D.C. Cir. 2010).

Here, although the district court concluded that, as of October 27, 2021, Capitol Forum knew its copyrights were infringed by an unknown subscriber, the record shows that, as of that date, Capitol Forum did not even know if the infringer was one of its 143 subscribers or one of its own employees. That is why in the D.C. suit against Market Securities Capitol Forum could only plead "on information and belief" that the culprit was one of its subscribers. Had Capitol Forum ***known*** the culprit was a subscriber, it would have pled such knowledge. It did not and could not do so.

In *Grecco*, this Court criticized the district court for construing the discovery rule in a manner that eviscerated the practicable ability of many copyright holders to obtain relief for infringements. The district court in *Grecco* held that

"sophisticated" copyright infringement plaintiffs cannot benefit from the discovery rule. *Grecco*, 112 F.4th at 147. Because plaintiff had touted its "sophistication" in discovering and litigating infringements, the district court dismissed its infringement claim on the ground that it should have discovered defendant's infringement within three years of when it began and was not entitled to use the discovery rule to protect the timeliness of that claim. *Id*. at 147-148. In essence, said this Court, the district court "imposed an injury-based date of accrual" to a particular class of copyright infringement plaintiffs, namely, those who were "sophisticated." *Id*. at 147.

This Court rejected the district court's approach and reversed. It concluded that the discovery rule "is not a benefit for which only some plaintiffs qualify." *Grecco*, 112 F.4th at 151. Rather, said this Court, the discovery rule should be construed in a practical manner that allows all copyright holders to obtain relief if they exercise due diligence in discovering an infringement. *Id*. at 152. The district court's construction of the discovery rule applicable to copyright infringement claims, which denies some copyright holders any practical means of protecting their claims against extinction on limitations grounds, flies in the face of *Grecco*.

The Supreme Court has itself applied policy considerations in interpreting statute of limitations accrual issues. In *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799, 813 (2024), it referred to "the ***plaintiff-***

***centric traditional rule***….that a statute of limitations begins to run only when the plaintiff has a complete and present cause of action." (emphasis added). More specifically, the limitations period "generally begins to run at the point where 'the ***plaintiff can file suit and obtain relief***.'" *Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 670 (2014) (emphasis added). And here, Chief Judge Howell's ruling confirms the practical impossibility identified in *Petrella*: before Capitol Forum obtained evidence identifying BTG's infringement, its theory that a subscriber was transmitting its articles was "just speculation." Capitol Forum therefore lacked sufficient information to identify the defendant against whom it could "file suit and obtain relief."

## II. CAPITOL FORUM DID NOT LEARN OF ANY INFRINGEMENT UNTIL APRIL 27, 2023

(reviewable *de novo*)

Even if the district court's view of the discovery rule were correct, the court committed reversible error in holding that "no reasonable jury" could find that Capitol Forum "first discovered that its copyrights had been infringed" after 2021.[86] On the contrary, the record evidence would have led a reasonable jury to the very opposite conclusion. That evidence establishes that, until April 27, 2023, Capitol Forum did not know of any infringement of its copyrights.

[86] Opinion at 5.

### A. Prior to April 27, 2023, Capitol Forum Only Suspected Infringement

As noted above, when Capitol Forum learned in October 2021 that Market Securities had published a summary of its articles, it could not determine how that could happen or who the source might have been. Its electronic monitoring systems showed no attempt by any subscriber to forward an "alert." Nor did the system show any log-in attempts from unauthorized users. All Capitol Forum's management knew at the time was that the likely source was either a subscriber or a Capitol Forum employee.

Because of this uncertainty, when Market Securities would not disclose its source, Capitol Forum was able to plead in the D.C. suit only "on information and belief" that a subscriber had been the source. If Capitol Forum had known that the culprit was a subscriber, it would have pled such knowledge.

Chief Judge Howell picked up on that very point in dismissing Capitol Forum's contributory infringement claim in that suit on March 23, 2023. Market Securities claimed that the Capitol Forum information it received could have been orally transmitted. Chief Judge Howell then characterized Capitol Forum's subscriber-transmission "theory" as "just speculation." [87]

[87] Downey Dec. ¶ 15 and Exhibit 9 thereto [ECF Dkt. No. 91-9].

Chief Judge Howell's ruling, which Capitol Forum cited in its opposition to BTG's motion for summary judgment but the district court did not mention, provides powerful objective confirmation that Capitol Forum's inference remained uncertain: as late as March 23, 2023, a federal judge examining the facts Capitol Forum had alleged concluded that Capitol Forum had nothing more than "speculation" to support its view that a subscriber infringed its copyrights. If an Article III judge could reasonably characterize Capitol Forum's inference as speculative in March 2023, the record cannot support the district court's holding that "***no reasonable jury*** (emphasis added)" could find that Capitol Forum lacked actual knowledge in October 2021.[88]

Second, as noted earlier, William Rose, BTG's Chief Operating Officer and its designated corporate representative under Fed. R. Civ. P. 30(b)(6), admitted at his deposition that, despite its due diligence, Capitol Forum did not know of BTG's copyright infringement until 2023. This was his testimony:

> Q. Does BTG dispute the allegation in the complaint that Capitol Forum did not know of BTG's copyright violations until 2023?
> A. No we do not dispute.
> Q. Does BTG dispute the allegation that Capitol Forum exercised due diligence in enforcing its copyright protections?
> A. No we do not dispute.[89]

[88] Opinion at 4.

[89] Downey Dec. at ¶ 27 and Exhibit 22 thereto at 106-107 [ECF Dkt. No. 91-22].

Capitol Forum did not need Rose's testimony to constitute a binding judicial admission by BTG. It needed only evidence from which a reasonable jury could find in its favor. The sworn testimony of BTG's designated corporate representative plainly qualifies.

However, the district court disregarded Rose's testimony on behalf of BTG that, despite its due diligence, Capitol Forum did not know of BTG's copyright infringement until 2023. Instead, it relied upon *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015), which says that an organization's Rule 30(b)(6) testimony "is 'binding' in the sense that whatever its deponent says can be used against the organization," but it "is not 'binding' in the sense that it precludes the deponent from correcting, explaining, or supplementing its statement." The district court said: "Defendant, through counsel, now disputes whether Plaintiff 'actually knew [before 2023] of the infringement by one or more of its subscribers.'"[90]

But as *Keepers* noted, a deponent can correct, explain, or supplement 30(b)(6) testimony with "evidence." *Keepers*, 807 F.3d at 35. Such evidence can come only from "materials in the record," such as depositions, affidavits, declarations, and stipulations. Fed. R. Civ. P. 56(c)(1)(A).

[90] Opinion at 8-9.

Here, the district court did not cite any evidence presented by Rose – or even BTG – to correct, explain, or supplement Rose's 30(b)(6) testimony. Instead, the district court cited only BTG's statement "through counsel,"[91] which actually was a statement drawn from one of BTG's summary judgment briefs. As this Court held in *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 47 (2d Cir. 1985), a mere "statement by counsel on a motion for summary judgment cannot be a substitute for an affidavit as to facts." Therefore, Rose's testimony that, "Capitol Forum did not know of BTG's copyright violations until 2023," was never appropriately refuted by BTG. The district court erred in disregarding it.[92]

## B. <u>The Evidence Does Not Support the District Court's Contrary Ruling</u>

The evidence the district court relied upon to find that Capitol Forum had actual knowledge of an infringement by a subscriber as of October 27, 2021, does not withstand scrutiny. Not one of the three facts relied upon by the district court to justify its conclusion that Capitol Forum knew in October 2021 that a subscriber was infringing its copyrights supports that finding.

---

[91] Opinion at 8.

[92] The district court characterized Rose's testimony as a "statement of Defendant's legal position," and stated that the deposition question posed by Capitol Forum's counsel to Rose was "somewhat ambiguous." *Id*. at 9. However, Rose was asked a ***factual*** question, not a legal one, and there is nothing ambiguous about it.

First, the district court found that, "[o]n October 25, 2021, Plaintiff learned from a subscriber that Market Securities was infringing its copyrights."[93] The district court was referring to an e-mail sent to Capitol Forum by one of its subscribers on October 25, 2021.[94]

The full text of the e-mail of October 25, 2021, states: "You did not get this from me but wanted to make sure you [sic] aware Market Securities, a broker focused on merger arb, posts summaries of Cap Forum reports."[95] Contrary to the district court's assertion, the sender of this e-mail did not say that Market Securities (or anyone else) "was infringing" Capitol Forum's copyrights and certainly did not state or even suggest that a subscriber was the source of the Market Securities summaries.

Second, the district court relied upon an e-mail that Josep Alba, Capitol Forum's Chief Revenue Officer, sent to Capitol Forum personnel on October 27, 2021.[96] The full text of the e-mail, which was written in response to the subscriber's e-mail to Capitol Forum of October 25, 2021, states: "I'm sure you are aware. 30 min lag time only. Gotta stop this as soon as we can. Will make it

---

[93] Opinion at 5.

[94] Exhibit 10 to Dornberger Dec. [ECF Dkt. No. 76-10].

[95] Exhibit 11 to Dornberger Dec. [ECF Dkt. No. 76-11].

[96] Opinion at 5.

difficult to get new funds and risk client cancellations. Personally would love to know who is sharing that with them ***as is*** a subscriber sharing the whole pieces without any doubts (emphasis added)."[97]

The district court interpreted Alba's e-mail as an affirmative declaration that a subscriber was the source of the articles. It did so by repositioning the word "is," thus turning his question about the identity of the source into a declarative sentence that the source was a subscriber. According to the district court, Alba wrote that "a subscriber [***is***] sharing the whole pieces without any doubt." But Alba actually wrote: "***is*** a subscriber sharing whole pieces without any doubt (emphasis added)." Thus, the very document the district court treated as proof of actual knowledge says the opposite: Alba wanted to know ***whether*** a subscriber was sharing the articles and ***who*** was doing so.

Were there any ambiguity in Alba's e-mail, Alba made it clear in his deposition that he did not know whether Market Securities was receiving the Capitol Forum articles from a subscriber or from a Capitol Forum employee. The following colloquy occurred at Alba's deposition:

---

[97] Exhibit 10 to Dornberger Dec. [ECF Dkt. No. 76-10].

> Q. Okay. So you believe as of October 27, 2021, there was no doubt in your mind a Capitol Forum subscriber was sharing full articles with Market Securities?
> A. What I'm saying there is that I would like to know or love to know who's sharing that because if you read the email that ["x"] sent to Teddy Downing and Matt Treacy, you cannot get all this information with certainty, a hundred percent impossible just by reading a headline and two sentences. And the only way you can get hands on the full article is if somebody that has access to the full article [is] sending it. ***And the only people that have access to full articles are The Capitol Forum employees and our subscribers.***
> Q, Right. So, again, you say without any doubt you thought a subscriber was sharing full articles with Market Securities?
> A. I – I will answer – well, I just answered. ***The only people*** that have access to The Capitol Forum report, like the articles, are people with access to our paywall and ***those are The Capitol Forum employees and our subscribers*** (emphasis added).[98]

Alba never said he had no doubt that a subscriber was sending Capitol Forum articles to Market Securities. Indeed, despite the effort of Market Securities' counsel twice to put words in Alba's mouth, Alba insisted that, in his mind, the source of the Capitol Forum articles to which Market Securities had gained access could have been ***either*** a Capitol Forum subscriber ***or*** a Capitol Forum employee.

[98] Exhibit 1 to Dornberger Dec. at 67-68 [ECF Dkt. 76-1].

Third, the district court relied on the cease-and-desist letter sent by counsel for Capitol Forum to Market Securities on October 27, 2021.[99] In that letter, counsel said that Capitol Forum had become aware that Market Securities "has been systematically infringing its registered copyrights and has done so by routinely providing abstracts of Capitol Forum's copyrighted materials to its own clients…. [and] regularly obtaining unauthorized copies of Capitol Forum's copyrighted materials after they are distributed to Capitol Forum subscribers."[100]

Counsel never said that Capitol Forum knew that one of its subscribers had infringed its copyrights and provided Capitol Forum articles to Market Securities. On the contrary, counsel said "we continue to investigate this matter," and asked Market Securities to "retain all copies of all Capitol Forum publications that you have received from every and any source," "all correspondence that may accompany any of those transmissions," and "every document that refers or relates to Capitol Forum and/or Capitol Forum's copyrighted material."[101]

In its recent opinion in *Hayden v. Koons,* 183 F.4th 136, 152 (2d Cir. 2026), this Court reiterated that the determination of the date on which a plaintiff should have discovered infringement '"is a ***fact-intensive inquiry*** (emphasis added),'"

---

[99] Opinion at 5.

[100] Exhibit 6 to Downey Dec. [ECF Dkt. No. 91-6].

[101] *Id*.

quoting *Grecco*, 112 F.4th at 152. But here, the district court considered only the evidence presented by BTG and failed to consider the contrary evidence showing that Capitol Forum lacked actual knowledge of an infringement until April 2023, including: (i) that Capitol Forum's electronic monitoring system did not disclose any subscriber forwarding activity; (ii) that Capitol Forum could not determine whether the source was a subscriber or a Capitol Forum employee; (iii) that, because of this uncertainty, Capitol Forum alleged that the source was a subscriber only on "information and belief;" and (iv) that Chief Judge Howell characterized Capitol Forum's subscriber-infringement theory as "just speculation."

A "fact-intensive inquiry" requires the consideration of all this evidence. The district court erred in considering only the evidence presented by BTG.

## III. CAPITOL FORUM WAS ENTITLED TO EQUITABLE TOLLING
(reviewable for abuse of discretion)

The district court also abused its discretion in failing to equitably toll the running of the copyright infringement statute of limitations during the period the extraordinary and successful efforts of BTG and Market Securities prevented Capitol Forum from acquiring knowledge of BTG's identity as the infringer. Had the district court granted equitable tolling, the three-year limitations period would not have run at all from October 2021 through April 27, 2023.

This Court held in *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) that, "[a] district court may exercise its discretion to equitably toll

the statute of limitations once a litigant has demonstrated 'that some extraordinary circumstance stood in her way and … that she has been pursuing her rights diligently'" (some internal quotation marks omitted). "Importantly, equitable tolling is appropriate where, 'despite all due diligence,' a plaintiff 'is unable to obtain vital information bearing on the existence of his claim' within the statute of limitations period." *Saint-Jean*, 129 F.4th at 142. This Court uses the 'stop clock' equitable tolling method, which means that the limitations period clock stops when the extraordinary interfering circumstance begins and only starts after that circumstance ends. *Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011).

The district court did not expressly take issue with Capitol Forum's evidentiary showing that it was prevented from filing its infringement claim within the three-year statutory limitations period that ended on October 27, 2024, by the extraordinary circumstance of fraudulent concealment perpetrated by BTG and Market Securities. Rather, the district court held that "no reasonable factfinder could find that any fraudulent concealment by Defendant prevented Plaintiff from filing within the limitations period," that is, by October 27, 2024, because "[b]y that point," meaning after April 27, 2023, "Plaintiff undisputedly knew

Defendant's identity."[102] Therefore, held the district court, "no reasonable factfinder could find that the 'prerequisites to equitable tolling' are satisfied."[103]

However, the record evidence shows that the fraudulent concealment of BTG as the infringer of Capitol Forum's copyrights was in effect at least from October 2021 to April 2023. If the district court had equitably tolled the three-year statute of limitations, the limitations period would have been tolled – that is, it would not have started to run – until the fraudulent concealment ended, which was on April 27, 2023. At that point, under this Court's "stop clock" principle, the limitations period would have started to run and continued for three full years until April 27, 2026. *Harper*, 648 F.3d at 139. Capitol Forum's filing on December 20, 2024, would have been well within that limitations period and timely.

The district court's contrary causation analysis was circular: it decided that concealment did not prevent Capitol Forum from filing by October 2024 because the concealment had ended in April 2023. But that reasoning effectively denies this Court's "stop clock" principle altogether. If an extraordinary circumstance prevents a plaintiff from filing its claim for 18 months, the plaintiff gets those 18 months back when the circumstance ends. The court cannot say, "but you still had 18 months left on the original calendar."

---

[102] Opinion at 10.

[103] *Id.*

At a minimum, a "reasonable factfinder" could find that the prerequisites for equitable tolling were satisfied. The district court abused its discretion in holding the opposite.

## IV. ALTERNATIVELY, IF THE DISTRICT COURT PERCEIVED A FACTUAL DISPUTE CONCERNING CAPITOL FORUM'S KNOWLEDGE, THAT DISPUTE WAS FOR THE JURY

(reviewable *de novo*)

The record establishes that, before April 2023, Capitol Forum lacked actual knowledge that (i) any subscriber had infringed its copyrights by transmitting its publications to Market Securities and that (ii) BTG was the infringer. The evidence clearly does not support the district court's contrary holding that Capitol Forum had actual knowledge of infringement prior to April 2023.

Indeed, the evidence supports Capitol Forum's position. Capitol Forum's electronic monitoring system did not disclose any subscriber forwarding activity; Capitol Forum's Chief Revenue Officer testified that the source could have been either a subscriber or a Capitol Forum employee; Chief Judge Howell characterized Capitol Forum's subscriber-infringement theory as "just speculation" as late as March 2023; and BTG's own designated Rule 30(b)(6) representative testified that BTG did not dispute either Capitol Forum's lack of knowledge of BTG's infringement until 2023 or that Capitol Forum exercised due diligence in enforcing its copyrights.

The district court's differing formulations about Capitol Forum's state of knowledge of the infringement of its copyrights as distinct from the identity of the infringer underscore the problem with its holding. At one point, the court held that "no reasonable jury" could find that Capitol Forum "first discovered that its ***copyrights had been infringed***" after 2021 (emphasis added).[104] At a second point, it held that "no reasonable jury" could conclude that Capitol Forum "first had actual knowledge of ***Defendant's copyright infringement*** any later than October 2021 (emphasis added)."[105] At a third point, it held that the testimony of BTG's 30(b)(6) corporate representative "does not create a material factual dispute regarding Plaintiff's knowledge" because: "Defendant, through counsel, ***now disputes*** whether Plaintiff 'actually knew [before 2023] of the infringement by one or more of its subscribers (emphasis added).'"[106]

It is difficult to reconcile that third statement with the district court's conclusion that no genuine factual dispute existed. If the district court concluded that the evidence presented a genuine factual dispute concerning Capitol Forum's knowledge, that conclusion required denial – not the grant – of summary judgment. That principle has particular force here because the statute of limitations is an

[104] Opinion at 5.

[105] *Id.*

[106] *Id.*

affirmative defense as to which BTG bore the burden of proof. As this Court stated in *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 242 n.2 (2d Cir. 1984): "Where the statute of limitations operates as an affirmative defense … issues of fact as to the application of that defense must be submitted to the jury."

Accordingly, Capitol Forum maintains that the record establishes its lack of knowledge of BTG's infringement before April 2023. But if the district court perceived a genuine factual dispute concerning that issue, it was required to deny BTG's motion for summary judgment and permit the jury to resolve that dispute.

## V. CAPITOL FORUM DID NOT ABANDON ITS MANAGEMENT CLAIM

(reviewable for abuse of discretion)

The district court abused its discretion in summarily dismissing Capitol Forum's claim that BTG distributed copyright material knowing that copyright management information was altered or removed.[107] The district court held that, although BTG moved for summary judgment "on all claims," Capitol Forum, in its opposition, never addressed its copyright management claim.[108] Citing *Moll v. Telesector Res. Grp., Inc.* 94 F.4th 218, 257 (2d Cir. 2024) and *Kovaco v.*

---

[107] Opinion at 10-11.

[108] *Id*. at 10.

*Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016), the district court, in the exercise of its discretion, held that this claim was "abandoned."[109]

It is true that, on the single substantive page of its three-page motion for summary judgment, BTG requested judgment on "all claims alleged in this action."[110] However, in its 23-page supporting memorandum of law, BTG did not say one word about Capitol Forum's copyright management claim.[111] Accordingly, there was no argument about Capitol Forum's copyright management claim for it to address, much less rebut, in its opposition to BTG's motion, and understandably Capitol Forum said nothing about it.

As this Court noted in its recent opinion in *Hayden v. Koons*, 183 F.4th 136, 148 (2d Cir. 2026): "Simply mentioning an issue in 'a perfunctory manner, unaccompanied by some effort at developed argumentation,' is insufficient" to present that issue to a court. *See Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219 (5th Cir. 2020) (district court erred in treating defendant's failure to address an argument presented by plaintiff in "the final sentence of … one paragraph" of its motion for summary judgment as the equivalent of '"no opposition"').

[109] Opinion at 10-11.

[110] Notice of Defendant BTG Pactual Asset Management US, LLC's Motion for Summary Judgment at 1 [ECF Dkt. No. 73].

[111] Memorandum of Law in Support of Defendant BTG Pactual Asset Management US, LLC's Motion for Summary Judgment [ECF Dkt. No. 74].

Because BTG made no reference in the memorandum of law supporting its motion for summary judgment to Capitol Forum's copyright management claim, there was nothing on that issue to which a response was owed by Capitol Forum. It was not Capitol Forum that "abandoned" its copyright management claim. It was BTG that abandoned any challenge to that claim. The district court therefore abused its discretion in deeming Capitol Forum's failure to address the copyright management claim in its opposition as "abandoned."

## CONCLUSION

The Court should reverse the district court's judgment and enter judgment in favor of Capitol Forum on the timeliness of its copyright infringement and management claims.

Respectfully submitted,

*/s/John B. Williams*
John B. Williams
Harty Williams, PLLC
1629 K Street, N.W.
Suite 300
Washington, DC 20006
Telephone: (202) 277-8435

*/s Neil H. Koslowe*
Neil H. Koslowe
Potomac Law Group, PLLC
1717 Pennsylvania Avenue, N.W.
Suite 1015
Washington, DC 20006
Telephone: (202) 320-8907

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 12,589 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
September 23, 2026